Quick, Administrator, v. Durham.

No. 13,031.

QUICK, ADMINISTRATOR, v. DURHAM.

SET-OFF.—*Judgments.*— *Decedent's Estate.* — *Insolvency.*—*Tort.* — A. and B. effected an exchange of lands. Subsequently B.'s administrator, in an action originally commenced by B., obtained a judgment against A. for deceit as to the value of the land received in the transaction. Afterwards A. recovered a judgment against the estate of B. for money which he had been compelled to pay by reason of a breach of the warranty against encumbrances contained in the deed to him.

*Held,* that A. is entitled to have his judgment set off against the judgment in favor of the estate, although the estate is insolvent.

*Held,* also, that the judgment against A. was not for a tort, within the proper meaning of that term, but that even if it were, the circumstances make a case for an equitable set-off.

From the Montgomery Circuit Court.

*N. P. H. Proctor, J. Wright* and *J. M. Seller,* for appellant.

*P. S. Kennedy, S. C. Kennedy, G. W. Paul* and *J. E. Humphries,* for appellee.

NIBLACK, J.—This was a proceeding to have one judgment set off against another, and was based upon a motion in writing, having the form and similitude of a complaint, upon which an issue was formed by an answer in denial.

At the hearing the following facts were seemingly well established:

On the 2d day of June, 1883, Marquis L. Bass, then a resident of the city of Crawfordsville, in this State, conveyed to William H. Durham, the appellee in this appeal, and, also, a resident of the same city, a lot of ground, with buildings thereon, situate in said city of Crawfordsville, by warranty deed, for the alleged consideration of nine thousand and five hundred dollars. In part payment of this sum Durham conveyed to Bass several tracts of land in the State of Iowa. The transaction was in fact an exchange of lands, in which a certain difference was to be paid by Durham.

Bass had never seen the Iowa lands thus conveyed to him, but accepted them solely upon the representations of Durham as to their location, quality and surroundings, as well as their value. A few months later, Bass, complaining that all the most material representations which Durham had made concerning these lands had proven to be untrue, commenced an action in the Montgomery Circuit Court against the latter for the alleged deceit which had been thus practiced upon him. Before the cause came on for trial Bass died, and Stebbins Quick, the appellant here, was appointed his administrator.

The subsequent proceedings were conducted in Quick's name, and he, as such administrator, on the 3d day of November, 1884, obtained a judgment against Durham for the sum of two thousand dollars in damages. During the pendency of this suit, and after Bass had died, that is to say, on the 8th day of September, 1884, Durham, alleging that he had been compelled to pay a large sum in excess of what he had agreed to pay, to relieve the property conveyed to him by Bass from encumbrances of various kinds, filed a claim in the same court against the estate of Bass for the gross sum so alleged to have been overpaid.

Upon issue joined and a trial, Durham, in January, 1885, obtained an allowance and judgment against the estate of Bass, in the hands of Quick to be administered, for the sum of eleven hundred and ten dollars.

Durham thereupon proceeded to make payments from time to time upon the judgment so rendered against him in favor of the estate of Bass, until he reduced the balance due upon it to about the sum of eleven hundred and twenty dollars, and then commenced this proceeding to have his judgment against the estate set off against, and applied to the extinguishment of, the balance so due upon the judgment against him. The court below, after hearing the evidence, came to the conclusion that the amount due for principal and interest on the judgment in Durham's favor, was greater than the balance

remaining unpaid on the judgment against him, and that, notwithstanding the admitted insolvency of the estate of Bass, the former judgment should be set off against, and applied to the extinguishment of, the latter, and ordered accordingly.

It was contended below, *first,* through the medium of a demurrer to the complaint, *secondly,* by answer filed to the complaint, and *thirdly,* under the form of a motion for a new trial, that, owing to the insolvency of Bass's estate as well as to the difference between the nature and character of the two judgments, one was not a proper set-off against the other, and that contention is continued by this appeal and renewed in this court.

It has been decided, and that is now the accepted law on the subject, that a proceeding of this kind is a summary proceeding, and may be commenced by, and proceeded with, as upon a mere motion. Hence that no formal pleadings are necessary, but that the parties may, as in analogous cases, mutually resort to formal pleadings and present questions of law for decision in that way. *Puett* v. *Beard,* 86 Ind. 172 (44 Am. R. 280).

It has been said, and we have no doubt rightly said, in some of our decided cases, that the question as to whether a judgment in favor of an estate ought to be set off and cancelled by one against it, is not affected by the solvency of the estate on the one hand, or its insolvency on the other. *Convery* v. *Langdon,* 66 Ind. 311; *Carter* v. *Compton,* 79 Ind. 37.

If at the time of the death of the decedent the equities existing between him and one of his seeming debtors are such that the judgments which may be rendered on their respective claims ought to be set off one against the other, and that is accordingly done, then the judgment against the supposed debtor does not really constitute assets in the hands of the administrator, and the creditors have no lawful cause of complaint. This is upon the familiar principle that where

items in an account against one apparently indebted to an estate are absorbed and cancelled in the settlement of mutual accounts between him and the decedent, such items do not become assets of the estate, and the creditors have no claim upon them as such, either legal or equitable. If, in such a case, nothing is left for the creditors, they are in no worse condition than are other unfortunate creditors who have no means of enforcing payment from those indebted to them.

It is true, as contended, that one judgment can properly be set off against another only when equity and good conscience shall require that such an adjustment shall be made. *Puett* v. *Beard, supra; Beard* v. *Puett,* 105 Ind. 68.

Invoking the application of this rule, it is argued that as the judgment rendered against the estate of Bass was upon a breach of a contract of warranty, and that as the judgment against Durham was for a tort, there was no close analogy or homogeneity between the two judgments, and nothing in equity which either required or permitted them to be set off against each other.

In the first place, the judgment against Durham was not for a tort, within the proper meaning of that term. It was for alleged deceit in, and, consequently, for the breach of, a contract in the same general sense as that on which the judgment was rendered against the estate of Bass. Actions of tort, properly speaking, are for libel, assault, trespass, and cases of that general character. In the next place, there is no such distinction between judgments *ex contractu* and those *ex delicto* as is claimed. On the contrary, it has been expressly decided that a judgment of the one class will be set off against one of the other when equity and justice will thereby be best subserved. See *Carter* v. *Compton, supra; Puett* v. *Beard, supra; Butner* v. *Bowser,* 104 Ind. 255.

In the case before us, both controversies arose out of substantially the same transaction, and the judgments resulted from breaches of mutual and concurrent contracts. There

were, therefore, good equitable reasons for setting off the judgments against each other. This view receives support in principle and by analogy from the case of *Judah* v. *Trustees of Vincennes University*, 16 Ind. 56.

The order appealed from is consequently affirmed, with costs.

Filed April 10, 1888; petition for a rehearing overruled June 23, 1888.